UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
J. FREDERICK MOTZ
UNITED STATES DISTRICT JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-0782
(410) 962-2698 FAX

January 3, 2007

Memo To Counsel Re: Laurel Sand & Gravel, Inc. v. Kendl Philbrick, et al.
Civil No. JFM-06-615

Dear Counsel:

As I indicated at the conclusion of the oral argument held on December 8, 2006, my schedule unfortunately does not permit me to write an extensive opinion. Instead, I will simply briefly state my rulings and the reasons for them. I hope you understand that in doing so I have thoroughly considered your written and oral arguments. They were excellent, and I very much appreciate the skill and professionalism with which they were made.

1. <u>Plaintiff's Claims Regarding the Absence of a Pre-Deprivation Hearing and an Alleged Unconstitutional Shifting of the Burden of Proof are Precluded by the Maryland Court of Appeals' Decision in *Maryland Aggregates Ass'n Inc. v. State of Maryland*</u>.

Federal courts apply *res judicata* (claim preclusion) and collateral estoppel (issue preclusion) to causes of action and issues decided by state courts. *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 467 n.6 (1982). Federal courts do not follow their own rules of *res judicata* but rather apply the rules of the state in which the prior judgment was obtained. *Id.* at 482.

Under Maryland law there are three requirements for *res judicata*: (1) there must be a final judgment on the merits; (2) the claim(s) must be substantially the same as the claim(s) in the prior case; and (3) the parties must be the same or in privity with the parties in the previous case. *Mears v. Town of Oxford*, 762 F.2d 368, 371-72 (4th Cir. 1985). "The doctrine of *res judicata* is that a judgment between the same parties and their privies is a final bar to any other suit upon the same cause of action, and is conclusive, not only as to all matters that have been decided in the original suit, but as to all matters which with propriety could have been litigated in the first suit." *MPC, Inc. v. Kenny*, 367 A.2d 486 (Md. 1977) (quoting *Alvey v. Alvey*, 171 A.2d 92, 94 (Md. 1961)); *see also Underwriters Nat'l Assurance Co. v. North Carolina Life & Accident & Health Ins. Guar. Ass'n*, 455 U.S. 691, 710 (1982) ("A party cannot escape the requirements of . . . *res judicata* by asserting its own failure to raise matters clearly within the scope of a prior proceeding.").[1] The Supreme Court has held explicitly that this doctrine applies

---

[1] The Maryland Court of Appeals has articulated two tests for determining whether *res judicata* applies: The "same evidence" test, *see, e.g., MPC, Inc. v. Kenny*, 367 A.2d 486 (Md. 1977), and a "same transaction" test. *See, e.g., Kent County Bd. of Educ. v. Bilbrough*, 525 A.2d

to §1983 actions. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75 (1984).

Here, two of the elements for the application of *res judicata* are not in dispute. Plaintiff (and others) brought the action resulting in the Maryland Court of Appeals' decision in *Maryland Aggregates Ass'n, Inc. v. State of Maryland,* 655 A.2d 886 (Md. 1995), and there was a final judgment in that case. Plaintiff contends, however, that the claims presented in *Maryland Aggregates* were not substantially the same as the claims asserted here: that the Dewatering Act deprives mine owners of their property without a predeprivation hearing and that the Act unconstitutionally shifts the burden to mine owners to prove that their mining operations did not cause wells on adjacent properties to run dry.

Plaintiff's contention is unpersuasive. According to the decision of the Court of Appeals in *Maryland Aggregates*, among the contentions made by plaintiffs was that "the statutory procedures . . . for resolving claims under the Act were constitutionally deficient." 655 A.2d at 890. While it is true, as Plaintiff argues, that the Court of Appeals did not go on to specifically address the pre-hearing deprivation and shifting of the burden of proof issues in *Maryland Aggregates*, that fact alone does not provide a basis for circumventing the doctrine of *res judicata*.[2] If plaintiffs in *Maryland Aggregates* believed that their contentions should have been more fully addressed, their recourse was to file a petition for reconsideration with the Maryland Court of Appeals or to seek review by the United States Supreme Court on the federal constitutional issues. *See Guess v. Bd. of Med. Exam'rs,* 967 F.2d 998, 1003 (4th Cir. 1992).

Plaintiff makes the related argument that *Maryland Aggregates* does not bar the present claims because here Plaintiff is making an "as applied" challenge to the Dewatering Act whereas

---

232, 235-36 (Md. 1986).

Although arguably these two tests are slightly different from one another, any difference here is entirely academic because Plaintiff's claims concerning the absence of a pre-deprivation hearing and an alleged unconstitutional shifting of the burden of proof are strictly questions of law.

[2]In footnote 18 of *Maryland Aggregates*, the Court of Appeals indicated that the objections to the procedures for establishing claims for compensation under the Dewatering Act were first made in the reply brief. That is a matter of no consequence. If the *Maryland Aggregates* plaintiffs failed to properly and fully develop their arguments on the pre-hearing deprivation and shifting of burden of proof issues, that was their responsibility and does not provide an excuse to evade the *res judicata* bar. That said, because footnote 18 can be read as suggesting that the Court of Appeals sidestepped the challenges to the claims resolution process under the Dewatering Act, I might be inclined to certify the *res judicata* question to the Maryland Court of Appeals for its decision were I not also holding that I should abstain from deciding the issues in this case. *See infra* Section 3. Thus, for me to utilize the certification process would be to ask for an advisory opinion, a course that clearly is inappropriate under the certification statute which contemplates that the Court of Appeals is to answer a certified question of law only "if the answer may be determinative of an issue in pending litigation in the certifying court." Md. Code Ann., Cts. & Jud. Proc. § 12-603.

in *Maryland Aggregates* the challenge was a facial one. That argument too is unavailing. Plaintiff's contentions that the Dewatering Act deprives mine owners of their property prior to the holding of any hearing and that the Act's shifting of the burden of proof on the proximate cause issue raise purely questions of law. No factual record is necessary to articulate them. Therefore, the distinction Plaintiff seeks to draw between a "facial" challenge and an "as applied" challenge is a wholly artificial one in the context of this case.[3]

    2. <u>Plaintiff's Takings Claim Fails as a Matter of Law</u>.

    Defendant does not argue that Plaintiff's as applied takings claim is barred by *res judicata*. Instead, it asserts that the claim fails as a matter of law. Defendant's position is meritorious. The Dewatering Act's imposition of a duty upon mine owners to pay the cost of constructing new wells on adjacent property does not itself deprive the mine owners of any interest in their own real property.[4] Moreover, the cost of drilling a new well on the Thomas property was only $3,000, and Plaintiff does not (and could not) contend that this cost is so prohibitive as to deny it the use of its own real property. Under these circumstances, it can be said neither that Plaintiff has identified any "property interest" that the State has invaded, *see, e.g., Eastern Enterprises v. Apfel*, 524 U.S. 498 (1988) (holding by five Justices, four dissenting and one concurring, that a law requiring a coal company to pay for the health benefits of miners it employed over thirty years prior does not constitute an unconstitutional taking), nor that any "taking" has occurred. *See, e.g., Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978) (holding that whether there has been a regulatory taking depends upon 1) the regulation's

---

[3]At oral argument Plaintiff cited a treatise, A. Vestal, *Res Judicata/Preclusion* 249, 250-51 n.15 (1969), in support of the proposition that *res judicata* should not apply where there is an overriding constitutional right involved. The Vestal treatise, in turn, cites two cases for the proposition it advocates. Those cases are fundamentally different from the present case. In *Glidden Co. v. Zdanok*, 370 U.S. 530, 543 (1962), the Supreme Court stated that it is the Court's "considered practice not to apply *stare decisis* as rigidly in constitutional as in nonconstitutional cases." The Supreme Court did not indicate that lower courts are free to ignore the doctrine of *res judicata* simply because a constitutional issue is involved. *Christian v. Jemison*, 303 F.2d 52 (5th Cir. 1962), involved a situation where racially segregated seating would have been permitted in Baton Rouge, Louisiana, while prohibited everywhere else in the United States, merely because one of the plaintiffs in the class action before the court had also been a plaintiff in an earlier action where a Baton Rouge ordinance permitting racially discriminatory seating had been upheld. Aside from the fact that *Christian* involved a question of broad social policy, as to which "patchwork geography" (to use the Fifth Circuit's phrase) would have been entirely unacceptable, the case is distinguishable because in the second action there were plaintiffs who had not participated in the earlier action. Here, Laurel Sand & Gravel is the only Plaintiff in the present action, and it had been one of the plaintiffs in the *Maryland Aggregates* case.

[4]The Dewatering Act does provide that if a mine owner does not pay for the construction of a new well on adjacent property under defined circumstances, the license of the mine owner to conduct mining operations will be revoked. Here, however, Plaintiff paid the cost of constructing a new well on the Thomas property, and the revocation of Plaintiff's license to conduct mining operations is not an issue.

economic impact on the property owner, 2) the extent to which the regulation has interfered with investment backed expectations, and 3) the nature of the government action).[5]

    3. <u>This Court Should Abstain From Deciding Plaintiff's Claims Under *Younger v. Harris* and its Progeny</u>.

    As recently summarized by the Fourth Circuit, under the abstention doctrine of *Younger v. Harris*, 401 U.S. 37 (1971):

> [A] federal court should abstain from interfering in a state proceeding, even though it has jurisdiction to reach the merits, if there is (1) an ongoing state judicial proceeding, instituted prior to any substantial progress in the federal proceeding; that (2) implicates important, substantial, or vital state interests; and (3) provides an adequate opportunity for the plaintiff to raise the federal constitutional claim advanced in the federal lawsuit.

*Moore v. City of Asheville*, 396 F.3d 385, 390 (4th Cir. 2005).

    In order to be "ongoing," the state judicial proceeding does not have to be in progress when the federal suit is filed. It is sufficient if the state proceeding is "coercive" and plaintiff prematurely terminated the proceeding by "failing to comply with the procedures of perfecting its appeal within the . . . [State] judicial system." *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 611 n.22 (1975); *Moore*, 396 F.3d at 391.

    Although Plaintiff argues that the administrative proceeding it instituted to recover the $3,000 it paid to build the Thomas well was not coercive,[6] there is nothing to distinguish that proceeding from the proceeding involved in *Moore* itself. There, an ordinance required an individual found to have committed a noise disturbance to pay a fine and then appeal any adverse ruling. Here, if anything, the Dewatering Act and the process it establishes is even more coercive than the ordinance involved in *Moore* because the Act requires a mine owner to pay for a new well on adjacent property without the making of any particularized finding in the first instance. Further, there can be no question that Plaintiff "prematurely" terminated the state proceedings by not appealing the administrative decision adverse to it to the Circuit Court for Prince George's County. It chose not to file such an appeal, forthrightly stating in its papers in

---

    [5]In seeking to distinguish *Moore v. City of Asheville*, 396 F.3d 385 (4th Cir. 2005), when arguing against *Younger* abstention, Plaintiff emphasizes that it is only seeking prospective relief, i.e., an injunction against future enforcement of the Dewatering Act. This argument underscores the insubstantiality of Plaintiff's takings claim because the hallmark of a takings claim is Plaintiff's attempt to obtain just compensation for what allegedly was unconstitutionally taken from it. Here, Plaintiff expressly disavows any effort to recover the $3,000 it paid for drilling of the new well on the Thomas property.

    [6]In determining that the administrative proceeding to which Plaintiff was subjected was coercive, I have considered the arguments made in the post-hearing letter submitted by Plaintiff's counsel dated December 11, 2006.

4

this Court that it wanted its federal claims to be litigated in a federal forum.

In regard to the second element of the *Moore* test, I find that the Dewatering Act does implicate important, substantial, and vital state interests. Although the Fourth Circuit has not yet specifically addressed whether the regulation of water use is an important state interest for purposes of *Younger*, it is widely acknowledged that zoning and regulation of land use are important state interests for purposes of *Younger* abstention. *See, e.g.*, *Harper v. Pub. Serv. Comm'n*, 396 F.3d 348, 352 (4th Cir. 2005) (stating that "property law concerns, such as land use and zoning questions, are frequently 'important' state interests justifying *Younger* abstention"). In my judgment, regulation of ground water is an element of regulation of land use or, at least, provides a direct analogy to it. The mere fact that the Act applies only in four counties in Maryland does not diminish the importance of the interest it addresses because these four counties were found by the Maryland General Assembly to be karst terrain "regions of the State" in which dewatering might interfere with wells and cause sink holes. Md. Code Ann., Envir. §15-812(a). Similarly, Plaintiff's contention that the Act does not expressly allocate a surface miner's use of ground water on its property is insufficient to demonstrate that the Act does not regulate land use. While the Act does not prohibit a mine owner from conducting mine operations on its own property or expressly mandate limits on the extent of those operations, by presumptively imposing liability upon a mine owner for drying up wells on adjacent properties by virtue of mining operations, the Act does affect an owner's use of its land.

Finally, there can be no question that Maryland law provided an adequate opportunity for Plaintiff to raise the federal constitutional claims raised in this action. Plaintiff, in fact, raised federal constitutional issues in the administrative proceeding, and it concedes it could have litigated those issues in the Maryland courts had it chosen to file an appeal to the Circuit Court for Prince George's County.

For all of these reasons, Defendant's motion to dismiss will be granted. A separate order to that effect is being entered herewith.

                                            Very truly yours,


                                            /s/


                                            J. Frederick Motz
                                            United States District Judge